

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re: ) | Case No. 6:08-bk-11363-PC |
| ) | |
| CALVIN KWONG MANN, ) | Adversary No. 6:08-ap-01178-PC |
| ) | |
| Debtor. ) | |
| _____ ) | Chapter 7 |
| ) | |
| SYMANTEC CORPORATION, ) | **MEMORANDUM DECISION** |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Date:  March 31, 2009 |
| ) | Time:  9:30 a.m. |
| CALVIN KWONG MANN, ) | Place: United States Bankruptcy Court |
| ) | Courtroom # 304 |
| ) | 3240 Twelfth Street |
| Defendant. ) | Riverside, CA 92501 |
| _____ ) | |

Plaintiff, Symantec Corporation ("Symantec") seeks a summary judgment against Defendant, Calvin Kwong Mann ("Mann") determining that Mann's debt to Symantec is nondischargeable under 11 U.S.C. § 523(a)(6). The court, having considered the pleadings, evidentiary record, and arguments of counsel, makes the following findings of fact and conclusions of law[1] pursuant to F.R.Civ.P. 52(a)(1), as incorporated into FRBP 7052 and applied to adversary proceedings in bankruptcy cases.

---

[1] The court also adopts and incorporates by reference into this Memorandum Decision the Separate Statement of Undisputed Facts and Conclusions of Law in Support of Symantec Corporation's Motion for Summary Judgment, except Conclusion of Law No. 145. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

1                          I. STATEMENT OF FACTS

2         Symantec designs, manufactures, publishes, and distributes software including Norton

3 System Works, Norton Antivirus, Norton Utilities, pcAnywhere, Norton Ghost, WinFax PRO,

4 Partition Magic, and Norton Internet Security.  It owns a registered trademark for each of these

5 products.  Symantec owns registered copyrights for Norton Antivirus, Norton Utilities, Norton

6 Internet Security, NortonGhost, and CleanSweep.  Symantec contracts with a third-party,

7 DisCopy Laboratories ("DCL") to manufacture the software.  DCL ensures that all products are

8 produced to Symantec's standards.  Symantec sells its software only to authorized dealers, and

9 produces software to be included with new computers as "original equipment manufacturer" or

10 "OEM" disks.  OEM disks are sold only to vendors and not to retail customers.  Symantec's

11 software contains certain characteristics that are not present in unauthorized replications of the

12 software.  If the software does not contain these characteristics, the software is not authorized by

13 Symantec and is counterfeit.

14         Mann, who has also used the name Calvin Chik, operated a fictitious business entity

15 known as Rowcal Distribution.  Mann was in charge of ordering all Symantec software for the

16 business.  Mann's suppliers were Ted Wu ("Wu") and Lily Zheng ("Zheng"), who operated Hi-

17 Tech Computer Services and Tedly Electronics, LLC.  Mann advertised, marketed, and sold

18 Symantec software primarily on the website www.rowcal.com.  Mann purchased counterfeit

19 copies of Symantec's proprietary works.  Each disk obtained by Mann contained unauthorized

20 copies of Symantec's copyrighted material.  Mann admits that he was banned from selling

21 Symantec products on eBay.  Mann testified by deposition that he remembered clearly not being

22 able to sell Symantec software on eBay because he was banned.  On March 24, 2005, Mann was

23 visited by William R. Baird ("Baird"), a Symantec employee, who informed Mann that the

24 products that he was selling were counterfeit.  Mann turned over 45 CDs to Baird on March 24,

25 2005.  Each of these disks bore one or more of Symantec's registered trademarks.  Each of these

26 disks were determined by Symantec to be counterfeit and made to look exactly like authorized

27

1    products of Symantec.  On March 25, 2005, Symantec sent a letter to Mann informing him that

2    he was selling counterfeit Symantec products and demanding that he immediately cease and

3    desist from further sales of counterfeit software.  Mann stopped selling the counterfeit Symantec

4    software products for a few days, but then resumed marketing the counterfeit software for

5    approximately a year.  Mann did not contact Symantec to confirm whether the software he was

6    continuing to sell was authentic.  On June 21, 2005, Symantec sent written notice to Tedley

7    Computer, Hi-Tech Computer Services, Tedley Electronics, LLC, Wu, and Zheng informing

8    them that they were selling counterfeit copies of Symantec software products.  Symantec's

9    written demand that they cease and desist from doing so was ignored.

10           On January 29, 2007, Symantec filed a Complaint against Mann, Rowcal Distribution,

11   and other non-debtor third-parties in Case No. 07-00676 –ODW (FFMx), styled Symantec

12   Corporation v. Mann, et al., in the United States District Court, Central District of California,

13   seeking damages for alleged 1) trademark infringement; 2) false designation of origin under the

14   Lanham Act; 3) copyright infringement; 4) fraud; 5) trafficking in counterfeit labels,

15   documentation and/or packaging in violation of 18 U.S.C. § 2318; 6) unfair competition; 7)

16   common law unfair competition; 8) state law false advertising; 9) intentional interference with

17   prospective economic advantage; and 10) negligent interference with prospective economic

18   advantage.  A default judgment was entered against the non-debtor defendants.

19           On February 29, 2008, Mann filed a voluntary petition under chapter 7 of the Bankruptcy

20   Code.[2]  Mann received a discharge on May 28, 2008, and the case was closed as a "no-asset"

21   case on June 12, 2008.

22           On May 19, 2008, Symantec timely filed its complaint in this adversary proceeding

23   _____

24   [2] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the
     Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse and
25   Consumer Prevention Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).  "Rule" references are to
     the Federal Rules of Bankruptcy Procedure ("F.R.Civ.P."), which make applicable certain
26   Federal Rules of Civil Procedure ("FRBP").

27

-3-

1   seeking a determination that Mann's debt to Symantec is nondischargeable under 11 U.S.C. §§

2   523(a)(2), (a)(4), and (a)(6).  Mann filed an answer to Symantec's complaint on August 18, 2008.

3   On January 13, 2009, Symantec moved for summary judgment on its cause of action under 11

4   U.S.C. § 523(a)(6).  On February 3, 2009, Mann filed his response in opposition to the motion.

5   Symantec filed its reply to Mann's opposition on February 12, 2009.  After a hearing on March

6   31, 2009, the matter was taken under submission.

7                              II. DISCUSSION

8          This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§

9   157(b) and 1334(b).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and

10  (O).  Venue is appropriate in this court.  28 U.S.C. § 1409(a).  To prevail under 11 U.S.C. §

11  523(a)(2)(A), (a)(4), or (a)(6), the plaintiff must establish the allegations of the complaint by a

12  preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 291 (1991).  Objections to the

13  dischargeability of a debt are to be literally and strictly construed against the objector and

14  liberally construed in favor of the debtor.  Quarre v. Saylor (In re Saylor), 108 F.3d 219, 221 (9th

15  Cir. 1997).

16  A.  Summary Judgment Standard.

17         Summary judgment is appropriate "if the pleadings, the discovery and disclosure

18  materials on file, and any affidavits show that there is no genuine issue as to any material fact and

19  that the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(c).  "The purpose of

20  summary judgment is to avoid unnecessary trials when there is no dispute as to the [material]

21  facts before the court." Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th

22  Cir. 1994).  Under Rule 56(c), the moving party bears the initial burden to establish that there are

23  no genuine issues of material fact to be decided at trial.  Celotex Corp. v. Catrett, 477 U.S. 317,

24  322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986).  "A 'material fact'

25  is one that is relevant to an element of a claim or defense and whose existence might affect the

26  outcome of the suit.  The materiality of a fact is thus determined by the substantive law

27

                                    - 4 -

1  governing the claim or defense." <u>T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626,

2  630 (9th Cir. 1987). Genuine issues of material fact are those "factual issues that make a

3  difference to the potential outcome and 'that properly can be resolved only by a finder of fact

4  because they may reasonably be resolved in favor of either party.'" <u>Svob. v. Bryan (In re Bryan)</u>,

5  261 B.R. 240, 243 (9th Cir. BAP 2001) (<u>quoting</u> <u>Anderson</u>, 477 U.S. at 250).   If the movant

6  bears the burden of persuasion, the motion must be supported by evidence establishing the

7  existence of each and every element essential to its case. *See* <u>Daubert v. Merrell Dow</u>

8  <u>Pharmaceuticals, Inc.</u>, 43 F.3d 1311, 1315 (9th Cir. 1995), *cert. denied*, 516 U.S. 869 (1995).

9        The burden then shifts to the nonmoving party to produce "significantly probative

10  evidence" of specific facts showing there is a genuine issue of material fact requiring a trial.

11  <u>T.W. Elec. Serv.</u>, 809 F.2d at 630 (*citing* F.R.Civ.P. 56(e)).   The nonmoving party cannot

12  "withstand a motion for summary judgment merely by making allegations; rather, the party

13  opposing the motion must go beyond its pleadings and designate specific facts by use of

14  affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue

15  for trial." <u>In re Ikon Office Solutions, Inc., Sec. Lit.</u>, 277 F.3d 658, 666 (3d Cir. 2002). If the

16  nonmoving party fails to establish a triable issue on an essential element of the movant's case,

17  the moving party is entitled to judgment as a matter of law. *See* <u>United States v. Shumway</u>, 199

18  F.3d 1093, 1104 (9th Cir. 1999).

19  B.  <u>Trademark Infringement & False Designation of Origin</u>.

20        The elements necessary to establish a trademark infringement claim under § 32 of the

21  Lanham Act are: 1) the existence of a mark; and 2) the subsequent use of that mark by another in

22  a manner likely to create consumer confusion.   15 U.S.C. § 1114(1); <u>Comedy III Productions,</u>

23  <u>Inc. v. New Line Cinema</u>, 200 F.3d 593, 594 (9th Cir. 2000). False designation of origin claims

24  under § 43(a) of the Lanham Act apply to both registered and unregistered marks and protect

25  against a wider range of practices. 15 U.S.C. § 1125(a)(1); <u>Brookfield Communications, Inc. v.</u>

26  <u>West Coast Entertainment Corp.</u>, 174 F.3d 1036, 1046 n.6 & 1047 n.8 (9th Cir. 1999). The

27

1  elements necessary to establish a false designation of origin claim are identical to those for

2  trademark infringement. Id.

3       Symantec has established the first element—the existence of a mark. Symantec owns a

4  registered trademark for Symantec, Norton System Works, Norton Antivirus, LiveUpdate,

5  Goback, CleanSweep, Norton Utilities, pcAnywhere, Norton Ghost, and WinFax Pro. Mann

6  admits that Symantec owns these trademarks. These facts are undisputed.

7       Symantec has also established that Mann used one or more of these trademarks in a

8  manner likely to create consumer confusion. To determine whether there is a likelihood of

9  confusion, a court considers the following eight factors: (1) similarity of marks; (2) relatedness of

10  the plaintiff's and defendant's products or services; (3) marketing methods; (4) strength of

11  plaintiff's marks; (5) defendant's intent in selecting the mark; (6) evidence of actual confusion;

12  (7) likelihood of expansion into other markets; and (8) the degree of care likely to be exercised

13  by purchasers. Downing v. Abercrombie & Fitch, 265 F.3d 94, 1008 (9th Cir. 2001) (citing

14  AMF v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir. 1979)). Some of these factors are more

15  important than others and they must be reviewed on a case-by-case basis. Brookfield Comm'n,

16  174 F.3d at 1058. In applying the factors to this case, the court finds that Mann's actions created

17  a likelihood of consumer confusion.

18      1. Similarity of Marks

19       Mann admits turning over 45 CDs to Baird. Mann also admits that each of these disks

20  contained copies of Symantec's copyrighted material, including copyrighted software and

21  manuals contained in different versions of Symantec's products. Each of these CDs bore one or

22  more of Symantec's registered trademarks. The CDs were counterfeit and made to look exactly

23  like Symantec's authorized products. Symantec has established that Mann sold software with

24  marks similar to those registered by Symantec. Because there is a likelihood that consumers

25  were confused by the similarity of the products, the court finds that this factor weighs against

26  Mann.

27

2. Relatedness of Symantec's and Mann's Products or Services

Mann admits that all of the CDs sold were produced to look exactly like genuine Symantec products. Because it is likely that the public would believe that Mann was selling an authentic Symantec product when, in fact, the product was counterfeit, this factor weighs against Mann

3. Marketing Methods

Mann admits that he advertised, marketed, and sold the counterfeit Symantec products on the Internet at www.rowcal.com.  Symantec also has a website through which consumers are directed to authorized distributors. Rowcal Distribution is not an authorized dealer of Symantec products, but Mann engaged in the business of advertising, marketing, and selling products through Rowcal Distribution purporting to be genuine Symantec products.  There is a likelihood that consumers could be confused that Rowcal Distribution was authorized to sell Symantec products when, in fact, it was merely a distributor of counterfeit software.

4. Strength of Symantec's Marks

There is no dispute that Symantec's marks are strong and recognizable.  Mann admits that Symantec has used their registered trademarks continuously to identify its products.  These trademarks are used both domestically and internationally.  This factor is undisputed and weighs against Mann.

5. Defendant's Intent in Selecting the Mark

Mann admits that the counterfeit software sold was intended to look exactly like Symantec's software.  Mann advertised, marketed and sold his counterfeit products to the same pool of customers targeted by Symantec.  In so doing, Mann sought to profit from the good will and business reputation that had attached to Symantec, its trademarks and copyrighted products. This factor weighs against Mann.

6. Evidence of Actual Confusion

According to the declaration of Marc Brandon, Symantec's director of Global Brand

- 7 -

1   Protection, Symantec received numerous inquiries and requests for support from consumers who

2   had purchased software from Mann.  Symantec examined copies of the software purchased by a

3   number of these consumers from Mann and determined them to be counterfeit.  The court infers

4   from this evidence that consumers were actually confused by Mann's actions.

5       7. Likelihood of Expansion into Other Markets

6       The summary judgment evidence establishes that Mann intended to advertise and sell the

7   counterfeit products to Symantec's target market.  When the goods are closely related, any

8   expansion is likely to result in direct competition.  Sleekcraft, 599 F.2d at 354.  Symantec and

9   Mann sold their products to the same pool of customers.  Mann's actions created direct

10  competition with Symantec thereby creating a likelihood of confusion as to the authenticity of the

11  product.  This factor weighs against Mann.

12      8. The Degree of Care Likely to be Exercised by Purchasers

13      There is a strong likelihood that a reasonably prudent consumer would be confused given

14  the similarities existing between genuine Symantec's products and the counterfeit products sold

15  by Mann.  The counterfeit CDs sold by Mann were produced to look exactly like Symantec's

16  registered software.  This factor weighs against Mann.

17      Based on the foregoing, Symantec has established a *prima facie* case of infringement by

18  Mann of Symantec's registered trademarks in violation of 15 U.S.C. § 1114(1) and false

19  designation of origin in violation of 15 U.S.C. § 1125(a)(1).

20  C.  Copyright Infringement.

21      Symantec owns registered copyrights for Norton AntiVirus, pcAnywhere, Norton Ghost,

22  Norton System Works, Norton Internet Security, WinFax PRO, and their component software

23  programs.  The owner of a registered copyright has exclusive rights to authorize or distribute

24  copies of the copyrighted work to the public.  17 U.S.C. § 106(3); Parfums Givenchy, Inc. v.

25  Drug Emporium, Inc., 38 F.3d 477, 480 (9th Cir. 1994).  Distribution of unauthorized

26  copyrighted materials is grounds for a cause of action for infringement.  Id. at 479.  The summary

27

- 8 -

1    judgment evidence supports a finding that Mann advertised, marketed, and sold counterfeit

2    copies of Symantec's copyrighted works to the public without Symantec's authorization and in

3    violation of Symantec's oral and written demand to cease and desist. Therefore, Symantec has

4    established a *prima facie* case of infringement by Mann of Symantec's registered copyrights in

5    violation of 17 U.S.C. § 106(3).

6    D.  Trafficking in Counterfeit Labels.

7          Any copyright owner who is injured, or threatened with injury, by one who knowingly

8    traffics in a counterfeit label affixed to, enclosing, or accompanying a copy of a computer

9    program in violation of 18 U.S.C § 2318(a)(1)(B) may bring a civil action for reasonable

10   attorneys fees and costs together with actual damages and profits or, alternatively, statutory

11   damages. 18 U.S.C. § 2318(f). For the reasons previously stated, the court finds that Symantec

12   has established a *prima facie* case that Mann trafficked in counterfeit labels by Mann in violation

13   of 18 U.S.C. § 2318(a)(1)(B).

14   D.  Section 523(a)(6)

15          Section 523(a)(6) excepts from discharge debts resulting from "willful and malicious

16   injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

17   A "deliberate or intentional injury" is required before § 523(a)(6) will render a debt

18   nondischargeable. *See* Kawaaukau v. Geiger, 523 U.S. 57, 61 (1998) (stating that

19   nondischargeability under § 523(a)(6) "takes a deliberate or intentional injury, not merely a

20   deliberate or intentional act that leads to injury"). Section 523(a)(6) requires separate findings on

21   the issues of "willful" and "malicious." The "willful" injury requirement of § 523(a)(6) is met

22   "when it is shown either that the debtor had a subjective motive to inflict injury *or* that the debtor

23   believed that injury was substantially certain to occur as a result of his conduct." Carrillo v. Su

24   (In re Su), 290 F.3d 1140, 1144 (9th Cir. 2002) (quoting Petralia v. Jercich (In re Jercich), 238

25   F.3d 1202, 1208 (9th Cir.), *cert. denied*, 533 U.S. 930 (2001)). A "malicious injury" involves

26   "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done

27

- 9 -

1  without just cause or excuse." Id. at 1146-47 (quoting Jercich, 238 F.3d at 1209). *See, e.g.,*

2  Diamond v. Kolcum (In re Diamond), 285 F.3d 822, 829 (9th Cir. 2002) (holding that a state

3  court jury finding that the debtors "intentionally caused injury" to the creditor "without just

4  cause" was entitled to preclusive effect for purposes of § 523(a)(6)); Murray v. Bammer (In re

5  Bammer), 131 F.3d 788, 791 (9th Cir. 1997) (en banc) (stating that malice under § 523(a)(6)

6  "does not require a showing of biblical malice, *i.e.,* personal hatred, spite or ill-will").

7       1. Willful Injury

8       Symantec asserts that the willful requirement is satisfied because the evidence shows that:

9  (1) Mann advertised, marketed, and sold counterfeit Symantec products; (2) Mann continued to

10 advertise, market, and sell counterfeit Symantec products after being banned from eBay for doing

11 so; and (3) Mann continued to advertise, market, and sell counterfeit Symantec products after

12 receiving oral and written demands from Symantec to cease and desist selling the counterfeit

13 software.

14       Based on the summary judgment record, the court finds that Mann's conduct was willful.

15 The evidence establishes that Mann sold counterfeit software that was produced to look exactly

16 like Symantec software.  On March 24, 2005, Mann was notified in person by Baird, Symantec's

17 representative, to stop purchasing and selling the counterfeit software.  On March 25, 2005,

18 Mann was given written notice from Symantec demanding that he cease and desist selling the

19 counterfeit software.  Mann admits that he was banned from selling Symantec products on eBay.

20 He testified by deposition remembering clearly not being permitted to sell Symantec software on

21 eBay because he was banned.  Mann admitted that, despite being banned from selling Symantec

22 products on eBay and being instructed to stop selling counterfeit copies of Symantec software, he

23 continued to sell counterfeit software for approximately one year.  Mann did not close his

24 business until March of 2006.  In sum, Mann's actions were deliberate and intentional.  Mann

25 had a subjective motive to inflict injury on Symantec.

26       To defeat Symantec's summary judgment motion, Mann had the burden of producing

27
                                   - 10 -

1    significantly probative evidence to establish a triable issue on an essential element of Symantec's

2    case.  Essentially, Mann argues that he only continued selling the counterfeit software after

3    March 2005 because Zheng, a Hi-Tech owner, assured him that the products were different from

4    Symantec products and not counterfeited.  However, Mann's opposition is not supported by

5    Zheng's declaration or any evidence other than his own representation.  Mann has not produced

6    significantly probative evidence to raise a genuine issue of fact regarding willfulness.  The

7    summary judgment evidence supports a finding that Mann knew that he was selling counterfeit

8    software, and continued to do so despite a specific demand from Symantec to cease and desist.

9        2.  Malicious Injury

10       A malicious injury involves: "(1) a wrongful act, (2) done intentionally, (3) which

11   necessarily causes injury, and (4) is done without just cause or excuse.  Carrillo v. Su (In re Su),

12   290 F.3d 1146-47 (9th Cir. 2002) (citing Petralia v. Jerich (In re Jercich, 238 F.3d 1202, 1209

13   (9th Cir. 2001)).  Malice cannot be implied from willfulness. In re Barbazoa, 543 F.3d 712.

14   However, the facts used to establish malice and willfulness may overlap.  Id.

15       Based on the summary judgment record, the court finds that the evidence establishes that

16   Mann's conduct was malicious.  Mann committed a wrongful act, and intentionally caused injury

17   to Symantec.  Mann sold counterfeit Symantec software, and continued to do so despite a

18   specific demand from Symantec to cease and desist.  Mann's wrongful conduct necessarily

19   caused injury to Symantec.  Symantec is in the business of producing and selling software.

20   Symantec's registered trademarks and copyrights ensure that their product will be only be used as

21   authorized by Symantec.  Mann advertised, marketed and sold his counterfeit products to the

22   same pool of customers targeted by Symantec.  In so doing, Mann sought to profit from the good

23   will and business reputation that had attached to Symantec, its trademarks and copyrighted

24   products.  Mann's unauthorized actions were intentional and necessarily caused damage to

25   Symantec's proprietary interests in its registered trademarks and copyrights.  Finally, Mann has

26   not provided a just cause or excuse.  Mann has not produced any evidence to establish that it was

27

- 11 -

1   reasonable to continue to sell counterfeit products after told to quit. Mann had already been

2   banned from eBay and the evidence indicates that he knew it was wrong to sell counterfeit

3   software. Mann's limited business experience and cultural limitations are not valid excuses and

4   are not supported by evidence.

5       Symantec is entitled to a partial summary judgment against Mann on all elements of

6   Symantec's claim for relief against Mann under § 523(a)(6), except the issue of damages, as a

7   matter of law.

8   E. Damages.

9       In its motion, Symantec has elected to seek the maximum amount of statutory damages

10  (1) permitted under 15 U.S.C. § 1117(c) attributable to Mann's trademark infringement;[3] (2)

11  permitted under 17 U.S.C. § 504(c) attributable to Mann's copyright infringement;[4] and (3)

12  permitted under 18 U.S.C. § 2318(f)(4) attributable to Mann's trafficking in counterfeit labels.

13  However, the court has wide discretion in awarding statutory damages and Symantec has not

14  _____

15  [3] Where a counterfeit mark is used, the victim of infringement "may elect, at any time before
    final judgment is rendered by the trial court, to recover, instead of actual damages and profits
16  under [15 U.S.C. § 1117(a)], an award of statutory damages for any such use in connection with
    the sale, offering for sale, or distribution of goods or services in the amount of –

17

18      (1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or
        services sold, offered for sale, or distributed, as the court considers just; or

19

20      (2) if the court finds that the use of the mark was willful, not more than $1,000,000 per
        counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the
        court considers just.

21

22  15 U.S.C. § 1117(d).

23  [4] Where liability for an infringement has been established, the copyright owner "may elect, at
    any time before final judgment is rendered, to recover, instead of actual damages and profits
24  [under 17 U.S.C. § 504(b)], an award of statutory damages for all infringements involved in the
    action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as
25  the court considers just." 17 U.S.C. § 504(c)(1). If the court finds that the infringement was
26  willful, "the court in its discretion may increase the award of statutory damages to a sum of not
    more than $150,000." 17 U.S.C. § 504(c)(2).

27

1 | provided evidence to assist the court on the issue of damages. Therefore, the court finds there is

2 | a genuine issue of material fact regarding Symantec's damages attributable to Mann's trademark

3 | infringement, copyright infringement, and trafficking in counterfeit labels.

4 | CONCLUSION

5 | Symantec is entitled to a partial summary judgment against Mann on all elements of

6 | Symantec's claim for relief against Mann under § 523(a)(6), except the issue of damages. The

7 | issue concerning the amount of Symantec's nondischargeable claim against Mann under §

8 | 523(a)(6) will be reserved for trial.

9 | A separate order and judgment will be entered consistent with this opinion.

10 | Dated: April 6, 2009

11 | PETER H. CARROLL
United States Bankruptcy Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

| In re: | . | . | | |
|---|---|---|---|---|
| | | | CHAPTER: | |
| | | Debtor(s). | CASE NUMBER: | |

## NOTE TO USERS OF THIS FORM:

**1)** Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
**4) Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*)      MEMORANDUM DECISION  was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of  4/6/09   , the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

☒  Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☒  Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐  Service information continued on attached page

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                 **F 9021-1.1**

| In re: | | |
|---|---|---|
| | | CHAPTER: |
| | Debtor(s). | CASE NUMBER: |

**ADDITIONAL SERVICE INFORMATION** (if needed):

ELECTRONIC

Henry Gonzalez on behalf of Plaintiff Symantec Corporation
hgonzalez@bautelaw.com

Stella A Havkin on behalf of Defendant Calvin Mann
havkinlaw@earthlink.net

United States Trustee (RS)
ustpregion16.rs.ecf@usdoj.gov

U.S. MAIL

**Stella A Havkin**
6320 Canoga Ave #1500
Woodland Hills, CA 91367

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                    **F 9021-1.1**