FILED
JUL - 6 2009
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

ENTERED
JUL - 6 2009
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

In re:

CALVIN KWONG MANN,

Debtor.

SYMANTEC CORPORATION,

Plaintiff,

v.

CALVIN KWONG MANN,

Defendant.

Case No. 6:08-bk-11363-PC

Adversary No. 6:08-ap-01178-PC

Chapter 7

**MEMORANDUM DECISION**

Date: June 26, 2009
Time: 9:30 a.m.
Place: United States Bankruptcy Court
Courtroom # 304
3240 Twelfth Street
Riverside, CA 92501

Plaintiff, Symantec Corporation ("Symantec") seeks a judgment determining that the debt owed by Defendant, Calvin Kwong Mann ("Mann") to Symantec is nondischargeable under § 523(a)(6) of the Bankruptcy Code.[1] The court conducted a trial in this adversary proceeding on June 26, 2009, at which time Henry H. Gonzalez appeared for Symantec and Stella A. Havkin appeared for Mann. The court, having considered the pleadings, the evidence, and arguments of counsel, makes the following findings of fact and conclusions of law[2] pursuant to F.R.Civ.P. 52(a)(1), as incorporated into FRBP 7052 and applied to adversary proceedings in bankruptcy

---

[1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse and Consumer Prevention Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("F.R.Civ.P."), which make applicable certain Federal Rules of Civil Procedure ("FRBP").

[2] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

cases.

## I. STATEMENT OF FACTS

Symantec designs, manufactures, publishes, and distributes software including Norton System Works, Norton Antivirus, Norton Utilities, CleanSweep, Norton Ghost, LiveUpdate, and GoBack. It owns a registered trademark for each of these products. Symantec owns registered copyrights for Norton Antivirus, Norton Utilities, NortonGhost, and CleanSweep. Symantec contracts with a third-party, DisCopy Laboratories ("DCL") to manufacture the software. DCL ensures that all products are produced to Symantec's standards. Symantec sells its software only to authorized dealers, and produces software to be included with new computers as "original equipment manufacturer" or "OEM" disks. OEM disks are sold only to vendors and not to retail customers. Symantec's software contains certain characteristics that are not present in unauthorized replications of the software. If the software does not contain these characteristics, the software is not authorized by Symantec and is counterfeit.

Mann, who has also used the name Calvin Chik, operated a fictitious business entity known as Rowcal Distribution. Mann was in charge of ordering all Symantec software for the business. Mann's suppliers were Ted Wu ("Wu") and Lily Zheng ("Zheng"), who operated Hi-Tech Computer Services and Tedly Electronics, LLC. Mann advertised, marketed, and sold Symantec software primarily on the website www.rowcal.com. Mann also advertised, marketed, and sold Symantec software on other websites, including Amazon.com, Nutdeal.com, and eBay. Mann purchased counterfeit copies of Symantec's proprietary works. Each disk obtained by Mann contained unauthorized copies of Symantec's copyrighted material. Mann admits that he was banned from selling Symantec products on eBay.

On March 24, 2005, Mann was visited by William R. Baird ("Baird"), a Symantec employee, who informed Mann that the products that he was selling were counterfeit. Mann turned over 45 CDs to Baird on March 24, 2005. Each of these disks bore one or more of Symantec's registered trademarks. Each of these disks were determined by Symantec to be

counterfeit and made to look exactly like authorized products of Symantec. On March 25, 2005, Symantec sent a letter to Mann by e-mail reiterating that he was selling counterfeit Symantec products and demanding that he immediately cease and desist from further sales of counterfeit software. Despite verbal and written notice to cease and desist, Mann resumed the marketing and sale of counterfeit Symantec software on March 29, 2005. Mann continued to purchase and sell counterfeit Symantec software for approximately one year after Baird's visit on March 24, 2005. Mann did not contact Symantec to determine whether the software he was continuing to sell was authentic, notwithstanding Baird's specific request that he do so. On June 21, 2005, Symantec sent written notice to Tedley Computer, Hi-Tech Computer Services, Tedley Electronics, LLC, Wu, and Zheng informing them that they were selling counterfeit copies of Symantec software products. Symantec's written demand that they cease and desist from doing so was ignored.

On January 29, 2007, Symantec filed a Complaint against Mann, Rowcal Distribution, and other non-debtor third-parties in Case No. 07-00676 –ODW (FFMx), styled Symantec Corporation v. Mann, *et al.*, in the United States District Court, Central District of California ("District Court Action"), seeking damages for alleged 1) trademark infringement; 2) false designation of origin under the Lanham Act; 3) copyright infringement; 4) fraud; 5) trafficking in counterfeit labels, documentation and/or packaging in violation of 18 U.S.C. § 2318; 6) unfair competition; 7) common law unfair competition; 8) state law false advertising; 9) intentional interference with prospective economic advantage; and 10) negligent interference with prospective economic advantage. A default judgment was entered against the non-debtor defendants.

On February 29, 2008, Mann filed a voluntary petition under chapter 7 of the Code. Mann received a discharge on May 28, 2008, and the case was closed as a "no-asset" case on June 12, 2008.

On May 19, 2008, Symantec timely filed its complaint in this adversary proceeding seeking a determination that Mann's debt to Symantec is nondischargeable under 11 U.S.C. §§

523(a)(2), (a)(4), and (a)(6). Mann filed an answer to Symantec's complaint on August 18, 2008. On January 13, 2009, Symantec moved for summary judgment on its cause of action under 11 U.S.C. § 523(a)(6). On February 3, 2009, Mann filed his response in opposition to the motion. Symantec filed its reply to Mann's opposition on February 12, 2009. After a hearing on March 31, 2009, the matter was taken under submission.[3]

On April 6, 2009, an Order Granting Plaintiff a Partial Summary Judgment on Plaintiff's Claim Under 11 U.S.C. § 523(a)(6) was entered in this adversary proceeding.[4] In the Memorandum Decision of even date therewith, the court found that Mann had infringed Symantec's registered trademarks in violation of 15 U.S.C. § 1114(1) and was liable for false designation of origin in violation of 15 U.S.C. § 1125(a)(1). The court also found that Mann had infringed Symantec's registered copyrights in violation of 17 U.S.C. § 106(3) and trafficked in counterfeit labels in violation of 18 U.S.C. § 2318(a)(1)(B). In making its determinations, the court found that Mann's conduct was both (a) willful in that Mann acted intentionally, deliberately, and with a subjective motive to inflict injury on Symantec; and (b) malicious in that Mann's wrongful acts were done intentionally, necessarily caused injury to Symantec, and were done without just cause or excuse. The court reserved for trial the issue of damages.

At the conclusion of trial on June 26, 2009, Symantec requested an award of statutory damages. Notwithstanding the court's finding of willfulness, Symantec seeks an award of statutory damages in (1) the maximum amount permitted under 15 U.S.C. § 1117(c) attributable to non-willful trademark infringement ($100,000 for Mann's violation of each of the nine

---

3/ Despite alleging causes of action under 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6), Symantec's counsel stated at the hearing on March 31, 2009, that Symantec was proceeding against Mann solely on its alleged cause of action under 11 U.S.C. § 523(a)(6).

4/ The court adopts and incorporates herein by reference the Order Granting Plaintiff a Partial Summary Judgment on Plaintiff's Claim Under 11 U.S.C. § 523(a)(6) entered on April 6, 2009, together with the findings of fact and conclusions of law contained in the Memorandum Decision entered on April 6, 2009.

trademarks at issue);[5] and (2) the maximum amount permitted under 17 U.S.C. § 504(c) attributable to non-willful copyright infringement ($30,000 for Mann's violation of each of the four copyrights at issue).[6] Symantec also seeks an award of reasonable attorneys' fees of $165,639.25, plus costs of court.

## II. DISCUSSION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a). To prevail under 11 U.S.C. § 523(a)(2), (a)(4), or (a)(6), the plaintiff must establish the allegations of the complaint by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991). Objections to the dischargeability of a debt are to be literally and strictly construed against the objector and liberally construed in favor of the debtor. Quarre v. Saylor (In re Saylor), 108 F.3d 219, 221 (9th

---

[5] The following nine trademarks are listed on the face of each Norton System Works CD:

1. "Symantec," registration number 1683688;
2. "Norton System Works," registration number 2488092;
3. "Norton AntiVirus," registration number 1758084;
4. "Ghost," registration number 1107115;
5. "Norton Utilities," registration number 1508960;
6. "CleanSweep," registration number 1936913;
7. "LiveUpdate," registration number 2243057;
8. "GoBack," registration number 2271088; and
9. "Symantec Logo," registration number 3009890.

[6] Norton SystemWorks includes the following four copyrighted software programs:

1. "Norton AntiVirus," registration number TX 4-908-397;
2. "Norton Ghost," registration number TX 4-715-124;
3. "Norton Utilities," registration number TX 3-772-061; and
4. "CleanSweep," registration number TX 4-426-292.

Although the court determined that Mann had trafficked in counterfeit labels in violation of 18 U.S.C. § 2318(a)(1)(B), Symantec did not seek at trial a separate award of damages under 18 U.S.C. § 2318(f)(4).

Cir. 1997).

A. Statutory Damages

The Copyright Act provides that "an infringer of copyright is liable for either – (1) the copyright owner's actual damages and any additional profits of the infringer . . . or (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(a). Section 504(c)(1) states, in pertinent part, that "the copyright owner may elect, at any time before final judgment, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually . . . in a sum not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). If the court finds that the infringement was willful, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

The trial court has "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir. 1984). A court must be guided by "'what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like.'" Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990) (quoting F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 232 (1952)).

Factors which a court may consider in calculating an award of statutory damages include "'the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendant's conduct, and the infringers' state of mind – whether wilful, knowing, or merely innocent.'" N.A.S. Import, Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992) (quoting 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1404[B], at 14-41 (1991)). The court may also take into consideration the "value of the copyright;" "the deterrent effect on others besides the defendant;" "whether a defendant has cooperated in providing particular records from which to assess the value of the

infringing material produced;" and "the potential for discouraging the defendant." Tiffany (NJ) Inc. v. Luban, 282 F.Supp.2d 123, 125 (S.D.N.Y. 2003) (quoting Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., 807 F.2d 1110, 1117 (2d Cir. 1986)). However, a plaintiff may elect statutory damages for copyright infringement "regardless of the adequacy of the evidence offered as to his actual damages and the amount of defendant's profits." Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc., 259 F.3d 1186, 1194 (9th Cir. 2001) (quoting Nimmer at § 1404[A]). In F.W. Woolworth Co., the Supreme Court discussed the policy underpinning statutory damages, stating:

> [A] rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within the statutory limits to sanction and vindicate the statutory policy.

344 U.S. at 233.

The Lanham Act also provides for statutory damages. Under the Lanham Act, the plaintiff may recover statutory damages of "not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). Upon a finding that use of the mark was willful, the court may award statutory damages of not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just. 15 U.S.C. § 1117(c)(2). "[T]he plain language of the statute affords plaintiffs the right to pursue statutory damages without proving actual damages; however, the statute does not provide guidelines for courts to use in determining an appropriate award." Louis Vuitton Malletier & Oakley, Inc. v. Veit, 211 F.Supp.2d 567, 583 (E.D. Pa. 2002). To calculate statutory damages for trademark infringement, courts have used the factors generally employed for determining statutory damages under 17 U.S.C. § 504(c). Id.

A plaintiff is entitled to a separate award of statutory damages under both the Copyright

Act and the Lanham Act where the defendant's conduct simultaneously infringed the plaintiff's copyright and its trademark. Nintendo of Am., Inc. v. Dragon Pac. Int'l, 40 F.3d 1007, 1011 (9th Cir. 1994); Microsoft Corp. v. Nop, 549 F.Supp.2d 1233, 1238 (E.D. Cal. 2008). "This is because the two statutory schemes serve different public policies, and protect against and remedy different injuries." Microsoft Corp., 549 F.2d at 1238.

In this case, Symantec is entitled to recover statutory damages under both the Copyright Act and the Lanham Act because Mann simultaneously infringed Symantec's copyrights and trademarks. Mann's actions were intentional, deliberate, and willful. Mann sold counterfeit software that was produced to look exactly like Symantec software. On March 24, 2005, Mann was notified in person by Baird, Symantec's representative, to stop purchasing and selling the counterfeit software. On March 25, 2005, Mann was given written notice from Symantec demanding that he cease and desist selling the counterfeit software. Despite verbal and written notice to cease and desist, Mann resumed the marketing and sale of counterfeit Symantec software on March 29, 2005. According to the evidence at trial, Mann purchased the following 140 pieces of counterfeit Symantec software from Hi-Tech Computer Services for resale within eight days after Baird's visit on March 24, 2009:

| | | |
|---|---|---|
| March 29, 2005 | NIS 2005 | 20 |
| March 30, 2005 | NAV 2005 | 50 |
| March 30, 2005 | NAV 2004 | 50 |
| April 1, 2005 | NSW 2005 | 20 |

Mann was given the opportunity to verify through Symantec whether the products he was selling, and offering for sale, were legitimate, but he ignored Symantec's demands to cease and desist and continued marketing the infringing products. Mann admits that, despite being banned from selling Symantec products on eBay and being instructed to stop selling counterfeit copies of Symantec software, he continued to sell counterfeit software for approximately one year after Baird's visit on March 24, 2005. Mann did not close his business until March of 2006.

Mann testified that he "only received at best $10,000 in gross profits from the sale of Symantec products." However, the court cannot determine the extent of Mann's gain, or

Symantec's loss, from the counterfeit sales due to inconsistencies in Mann's testimony and the inadequacy of his books and records.[7] By focusing on internet sales, Mann had access to an unlimited number of potential customers. Louis Vuitton, 211 F.Supp.2d at 584 ("While the record contains no evidence of the actual scope of defendants' sales, nor the number of hits the internet site received, given the scope of the internet supermarket, such sale offerings are presumptively quite high . . . .").

In view of the limitless number of customers available to Mann through his website and marketing activities on Amazon.com, Nutdeal.com, and eBay, coupled with Mann's unwillingness to terminate his infringement despite ample warning, the court will award statutory damages of $865,000, consisting of $25,000 for each of the four copyrights at issue, and $85,000 for each of the nine trademarks at issue. The court finds that the award is well within the range of awards in similar cases and is reasonable. See, e.g., Microsoft Corp. v. Nop, 549 F.Supp.2d 1233, 1239 (E.D. Cal. 2008) (after default, awarding statutory damages of $970,000, consisting of $100,000 for each of nine trademark infringements and $30,000 for each of nine copyright infringements); Microsoft Corp. v. McGee, 490 F.Supp.2d 874, 882 (S.D. Ohio 2007) (after default, awarding statutory damages of $100,000 for each of five trademark infringements and $30,000 for each of seven copyright infringements, for a total of $710,000); Microsoft Corp. v. Sellers, 411 F.2d 913, 921-22 (E.D. Tenn. 2006) (on summary judgment, awarding statutory damages of $460,000 consisting of $100,000 for each of four trademark infringements and

---

[7] Symantec sought to obtain from Mann through discovery all records concerning Rowcal Distribution's purchase and sale of Symantec software. The records obtained by Symantec were inadequate to establish the profits reaped by Rowcal Distribution. Mann testified at trial that he purchased Symantec software from Hi-Tech Computer Services and Global PC for resale. The evidentiary record does not include information concerning the purchases made from Global PC. According to Symantec's Exhibit 63, Mann purchased 6,968 copies of Symantec software from Hi-Tech Computer Services between July 2, 2004 and March 1, 2006. Mann testified that he sold his entire inventory of Symantec software. However, the only record of sales by Mann is Symantec's Exhibit 64 which documents the sale of only 645 Symantec CDs by Rowcal Distribution between July 1, 2004 and August 18, 2005.

$30,000 for each of two copyright infringements); Louis Vuitton, 211 F.2d at 585 (after default, awarding statutory damages of $1,500,000 for the willful infringement of eight trademarks). The court further finds that the award will serve the goals of compensating Symantec, and deterring Mann and others from trafficking in counterfeit software in the future.

B. Reasonable Attorneys' Fees

The Copyright Act and Lanham Act both authorize the award of attorneys' fees and costs. 17 U.S.C. § 505; 15 U.S.C. § 1117(a). The Copyright Act authorizes attorneys' fees for the prevailing party as a matter of the court's discretion. Fogarty v. Fantasy, Inc., 510 U.S. 517, 534 (1994). The Lanham Act authorizes the award of reasonable attorneys' fees in exceptional cases, which has been defined by the Ninth Circuit as cases where the infringement can be defined as "malicious, fraudulent, deliberate, or willful." Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1023 (9th Cir. 2002).

The court finds that Mann's acts of infringement were willful and that an award of attorneys' fees and costs is warranted based upon the statutory authorization to award attorneys' fees and costs in both the Copyright Act and the Lanham Act. See 17 U.S.C. § 505; 15 U.S.C. 1117(a). Symantec seeks an award of attorneys fees in the amount of $165,639.25, consisting of $117,696.75 incurred in the District Court Action and $47,942.50 incurred in this adversary proceeding. Symantec did not, however, apportion the attorneys' fees and expenses incurred in the District Court Action between Mann and the non-debtor co-defendants in the case. Nor did Symantec apportion the attorneys' fees and expenses incurred in the District Court Action between its infringement claims against Mann and the other causes of action against Mann alleged in the complaint filed in the district court.

Given the evidentiary record, the court concludes that Symantec is entitled to reasonable attorneys fees and costs totaling $85,942.50, consisting of $38,000 incurred in the District Court Action and $47,942.50 incurred in this adversary proceeding.

CONCLUSION

Symantec is entitled to a judgment against Mann for statutory damages in the amount of $865,000, reasonable attorneys' fees of $85,942.50, and costs of court, which will be excepted from discharge under 11 U.S.C. § 523(a)(6). All other relief requested in Symantec's complaint will be denied.

A separate judgment will be entered consistent with this opinion.

Dated: July 6, 2009

PETER H. CARROLL
United States Bankruptcy Judge

| In re: Debtor(s). | CHAPTER<br>CASE NUMBER |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 3420 12th Street, Riverside, CA 92501

The foregoing document described MEMORANDUM DECISION will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 7/6/09 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On ______________________ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ______________ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 7-6-09 | Connie Ray | Connie Ray |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009* **F 9013-3.1**

Main Document Page 13 of 15

| In re: Debtor(s). | CHAPTER<br>CASE NUMBER |
|---|---|

ELECTRONIC

- Henry Gonzalez hgonzalez@bautelaw.com, jdiep@bautelaw.com
- Stella A Havkin havkinlaw@earthlink.net
- United States Trustee (RS) ustpregion16.rs.ecf@usdoj.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009* **F 9013-3.1**

| In re: | CHAPTER: |
|---|---|
| Debtor(s). | CASE NUMBER: |

**NOTE TO USERS OF THIS FORM**:

**1)** Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
**4) Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

## NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) MEMORANDUM DECISION was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of 7/6/09 , the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

☒ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009* **F 9021-1.1**

Main Document Page 15 of 15

| In re: Debtor(s). | CHAPTER: CASE NUMBER: |
| --- | --- |

**ADDITIONAL SERVICE INFORMATION** (if needed):

ELECTRONIC

- Henry Gonzalez hgonzalez@bautelaw.com, jdiep@bautelaw.com
- Stella A Havkin havkinlaw@earthlink.net
- United States Trustee (RS) ustpregion16.rs.ecf@usdoj.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009* **F 9021-1.1**